# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

|  |  |  |
|---|---|---|
| **DENNIS PICKETT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 11-1227-JWL** |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying Social Security disability benefits (SSD) and Supplemental Security income (SSI) under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act).  Finding no error, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

## I.     Background

Plaintiff applied for both SSD and SSI on December 13, 2006.  (R. 9, 104-11).  In due course, Plaintiff's applications were denied, he exhausted the administrative process, and he sought judicial review before the U. S. District Court for the District of Kansas.

(R. 705-28).  The district court found errors in the Commissioner's rationale for according no weight to the medical opinion of a treating source, in his adoption of the residual functional capacity (RFC) assessment of a Single Decisionmaker (SDM) who was not a medical professional, and in his failure to consider the opinion of a nontreating psychologist, and remanded the case to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings.  Id.  In an order dated February 25, 2010, the Appeals Council vacated the earlier decision of the Commissioner, and remanded the case to an Administrative Law Judge (ALJ) "for further proceedings consistent with the order of the court."  (R. 703).  It instructed the ALJ to "offer the claimant the opportunity for a hearing, take any further action needed to complete the administrative record, and issue a new decision."  Id.

The proceedings on remand were held before ALJ James Harty, a different ALJ than handled the case previously.  On remand, another psychological consultation was procured, and the administrative record was updated.  (R. 729-903).  On January 5, 2011, Plaintiff appeared with counsel for a new hearing.  (R. 648, 666-700).  At the hearing, testimony was taken from Plaintiff and from a vocational expert.  (R. 666-700).  The ALJ confirmed that Plaintiff was alleging an onset date of May 9, 2002, just as alleged in the 2008 hearing, and left the record open for Plaintiff to submit additional medical records and a post-hearing memorandum.  (R. 669-70, 698-700).  After the additional medical records and the post-hearing memorandum were submitted, ALJ Harty issued his decision on April 26, 2011.  (R. 648-59).  In the decision, he determined that Plaintiff has not

performed substantial gainful activity since his alleged onset date and has a combination

of severe impairments, but that his condition does not meet or medically equal the

severity of a Listed Impairment.  (R. 650-51).  He determined that Plaintiff's allegations

of symptoms "are not credible to the extent they are inconsistent with" the RFC assessed

by the ALJ (R. 653), but that Plaintiff's "allegations of back pain are credible to the

extent that he is reduced to work at the light exertional level with the additional

limitations set out" in that RFC.  (R. 655).

        The ALJ considered the opinion evidence and accorded "controlling weight" to the

opinion of Dr. Lasak, "little weight" to the opinion of Dr. Neblett, "some weight" to the

opinions of Dr. Liebenau and Dr. Parsons, "significant weight" to the opinion of Dr.

Moeller, and "little weight" to the opinion of Plaintiff's mother.  (R. 656-57).  The ALJ

assessed Plaintiff with the RFC for a range of light work limited by significant postural,

environmental, and mental restrictions.  (R. 653).  He determined that Plaintiff has no past

relevant work, but that considering Plaintiff's age, education, work experience, and RFC,

jobs exist in significant numbers in the national economy that Plaintiff can perform.  (R.

658).  Based upon that determination, he found that Plaintiff has not been disabled within

the meaning of the Act, and denied Plaintiff's applications.  (R. 659).  The Appeals

Council did not assume jurisdiction of the decision after remand, and therefore that

decision is the final decision of the Commissioner.  Hamlin v. Barnhart, 365 F.3d 1208,

1214 (10th Cir. 2004); see also 20 C.F.R. §§ 404.984(a), 416.1484(a) (after remand, the

ALJ's decision becomes the "final decision of the Commissioner after remand . . . unless

the Appeals Council assumes jurisdiction of the case").  Plaintiff timely filed this case,

seeking judicial review of the Commissioner's final decision.  (Doc. 1).

## II.    Legal Standard

The court's jurisdiction and review are guided by the Act.  Weinberger v. Salfi,

422 U.S. 749, 763 (1975) (citing 42 U.S.C. § 405(g)); Wall v. Astrue, 561 F.3d 1048,

1052 (10th Cir. 2009) (same); Brandtner v. Dep't of Health and Human Servs., 150 F.3d

1306, 1307 (10th Cir. 1998) (sole jurisdictional basis in social security cases is 42 U.S.C.

§ 405(g)); see also, 42 U.S.C. § 1383(c)(3) (SSI decision "shall be subject to judicial

review as provided in section 405(g)").  Section 405(g) provides for review of a final

decision of the Commissioner made after a hearing in which the Plaintiff was a party.  It

also provides that in judicial review "[t]he findings of the Commissioner as to any fact, if

supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court

must determine whether the factual findings are supported by substantial evidence in the

record and whether the ALJ applied the correct legal standard.  Lax v. Astrue, 489 F.3d

1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir.

2001).  Substantial evidence is more than a scintilla, but it is less than a preponderance; it

is such evidence as a reasonable mind might accept to support a conclusion.  Wall, 561

F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  The court may

"neither reweigh the evidence nor substitute [its] judgment for that of the agency."

Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of

Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v.

4

Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  Whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that he has a physical or mental impairment which prevents him from engaging in any substantial gainful activity, and which is expected to result in death or to last for a continuous period of at least twelve months.  Thompson v. Sullivan, 987 F.2d 1482, 1486 (10th Cir. 1993) (citing 42 U.S.C. § 423(d)); see also, Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir. 1985) (quoting identical definitions of a disabled individual from both 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A));  accord, Lax, 489 F.3d at 1084 (citing 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).  The claimant's impairments must be of such severity that he is not only unable to perform his past relevant work, but cannot, considering his age, education, and work experience, engage in any other substantial gainful work existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner uses a five-step sequential process to evaluate disability.  20 C.F.R. §§ 404.1520, 416.920 (2011); Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether

5

claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC).  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining whether claimant can perform past relevant work; and whether, considering vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy within Plaintiff's capability.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims the ALJ erred because he failed to provide good reasons for according "little weight" to Dr. Neblett's treating source opinion, and because his credibility determination is not supported by substantial record evidence.  The Commissioner argues that substantial record evidence, in fact, supports the ALJ's

6

credibility determination and that the ALJ properly considered Dr. Neblett's opinion, partially discounted and partially credited it, and the opinion is not entitled to deference as a treating source opinion.  Although the court relies upon somewhat different reasoning than presented in the Commissioner's brief, it finds no error in the decision.  The court will address the issues in the order presented in Plaintiff's Brief.

## III.   Evaluation of Dr. Neblett's Opinion

Plaintiff claims the ALJ erred when he failed to provide good reasons for according "little weight" to Dr. Neblett's treating source opinion.  Plaintiff quoted ALJ Burbank's assessment of Dr. Neblett's opinion in the decision which was reversed and remanded by the district court.  (Pl. Br. 6).  He summarized the Magistrate Judge's reasons for finding error in ALJ Burbank's determination.  Id.  Then, he quoted Dr. Neblett's opinion, and ALJ Harty's evaluation of that opinion.  Id. at 7-8.  Plaintiff recognized three reasons ALJ Harty discounted Dr. Neblett's opinion:  Plaintiff's back problems appear to come and go, there were periods when Plaintiff worked at the level of significant gainful activity (SGA), and Dr. Neblett's opinion was not consistent with the longitudinal record.  Id. at 8-10.  He alleged error in each of those reasons.  Id.

The Commissioner responds that the ALJ partially discounted and partially credited Dr. Neblett's opinion and stated proper reasons for discounting the opinion. (Comm'r Br. 20).  He then points to the regulations, asserting that "a treating physician's opinion is entitled to great weight only if the physician has treated the claimant "a number of times and long enough to have obtained a longitudinal picture of [the claimant's]

7

impairments.'" Id. at 21 (quoting 20 C.F.R. §§ 404.1527(d)(2)(i), 416.927(d)(2)(i)).[1]  He

argues that the Tenth Circuit has held that a physician is not "considered a treating

physician unless he 'has dealt with a claimant and his maladies over a long period of

time' and therefore has 'a deeper insight into the medical condition of the claimant'" than

a physician who has examined the claimant once (a nontreating physician) or one who has

merely reviewed the record (a nonexamining physician).[2]  Id. (quoting Doyal v. Barnhart,

331 F.3d 758, 762 (10th Cir. 2003)).  On the strength of that authority and the fact that

Dr. Neblett's opinion was based on only four visits and on treatment for less than two

months, the Commissioner argues that Dr. Neblett's opinion "is not entitled to deference

as a 'treating source opinion' under the regulations."  Id. at 21-22.  Plaintiff complains

that the Commissioner's argument regarding four visits in less than two months is post-

hoc rationalization in support of the decision, and that the court must evaluate the

decision only on the rationale presented therein.  (Reply 1).

### A.      Standard for Weighing Treating Source Opinions

---

[1]The court notes that the Commissioner's Brief mistakenly cites the quoted portion of the regulations as "§§ 404.1527(d)(I) and 416.927(d)(I)."  (Comm'r Br. 21).

[2]The regulations define three types of "acceptable medical sources:"
"Treating source:"  an "acceptable medical source" who has provided the claimant with medical treatment or evaluation in an ongoing treatment relationship.  20 C.F.R. §§ 404.1502, 416.902.
"Nontreating source:"  an "acceptable medical source" who has examined the claimant, but never had a treatment relationship.  Id.
"Nonexamining source:"  an "acceptable medical source" who has not examined the claimant, but provides a medical opinion.  Id.

A physician who has treated a patient frequently over an extended period of time (a treating source) is expected to have greater insight into the patient's medical condition, and his opinion is generally entitled to "particular weight." Doyal, 331 F.3d at 762. But, "the opinion of an examining physician [(a nontreating source)] who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion." Id. at 763 (citing Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995)). However, opinions of nontreating sources are generally given more weight than the opinions of nonexamining sources who have merely reviewed the medical record. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004); Talbot v. Heckler, 814 F.2d 1456, 1463 (10th Cir. 1987) (citing Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983), Whitney v. Schweiker, 695 F.2d 784, 789 (7th Cir. 1982), and Wier ex rel. Wier v. Heckler, 734 F.2d 955, 963 (3d Cir. 1984)).

If the treating source opinion is not given controlling weight, it is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). After considering the factors, the ALJ must give reasons in the decision for the weight he gives the treating source opinion. Id. 350 F.3d at 1301. "Finally, if the ALJ rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing so." Id. (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996) (quoting Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987)).

**B.      The ALJ's Evaluation of Dr. Neblett's Opinion**

As Plaintiff admits, the ALJ explained his assessment of Dr. Neblett's opinion:

> The claimant's physician, Robert S. Neblett, M.D., stated that due to pain and medication, the claimant could have difficulty concentrating and keeping up a normal work pace.  (Exhibit C23F/8 [(R. 601)]).  However, [(1)] the claimant's back problems appear to come and go.  He admitted that he did not have difficulties from 2000 until a flare up in 2007 and then not again until a flare up in 2009.  (Exhibits C26F/2 [(R. 607)]; C33F/22 [(R. 897)]).  The record shows that [(2)] the claimant also has had periods where he worked at substantial gainful activity.  (Exhibits C7D [(R. 794-96)]; C1E [(R. 115-26)]).  To accommodate the claimant's occasional difficulty with concentration and keeping up a normal work pace, the evidence supports a finding that the claimant is limited to simple, routine, repetitive tasks not performed in a fast-paced production environment.
>
> As for the opinion evidence, in September 2007, Dr. Neblett indicated that the claimant was significantly restricted in his ability to sit and would likely need to request breaks to change positions.  Lifting would also be very limited.  (Exhibit C23F/8 [(R. 601)]).  This opinion is given little weight as [(3)] it is not consistent with the longitudinal record.  As noted above, the claimant had occasional flare ups of back pain when he over did things but [(4)] admitted that he essentially controlled his back pain with physical exercise.  (Exhibit 33F/22 [(R. 897)]).

(R. 656-57) (numbering added).

## C.   Analysis

As the numbering added to the ALJ's assessment illustrates, Plaintiff did not recognize the ALJ's fourth reason for discounting Dr. Neblett's opinion--that Plaintiff admitted he controlled his back pain with physical exercise.  As the ALJ noted, at his office visit in September 2009, Plaintiff reported that his back had been stable for two years with physical activity.  (R. 897); see also (R. 654) (decision) (claimant "stated that his back had been stable with physical exercise for two years").  The office note cited by the ALJ memorializes Plaintiff's report that sitting for eight hours during the drive from

Florida to Wichita, Kansas had caused a recurrence of his back pain, and it also notes that Plaintiff's latest previous flare-up was two years prior.  (R. 897).  Moreover, at the hearing Plaintiff testified that he treated his pain "through exercise and stuff[,] I cannot take pills.  I'll take some Ibuprofen when I need to."  (R. 690).  Earlier, he stated, "I do little exercises my therapist taught me and then I've got a metal back brace that I wear." (R. 678).  Substantial record evidence supports the ALJ's fourth reason for discounting Dr. Neblett's opinion.

Regarding the first reason (Plaintiff's back problems appear to come and go), Plaintiff argues that the duration requirement for a "severe" impairment is twelve months, that the ALJ found his degenerative disc disease and sciatica are "severe," and therefore, the ALJ must have found that the "flares" in 2007 and 2009 each lasted for twelve months or more.  He acknowledges that "there is evidence in the record to support the notion that plaintiff had periods when his back pain was exacerbated," but argues that between "flares" his "baseline pain" is disabling and "when his pain was exacerbated . . . he was bedridden and functionally derelict, as opposed to 'just' disabled," and the ALJ's "transitory pain rationale does not provide a good reason for rejecting the majority of Dr. Neblett's opinion."  (Pl. Br. 9-10) (citing R. 601, 655, 897).

Plaintiff's logic is faulty.  The ALJ's finding that Plaintiff's back impairments are severe does not require that he also found that the "flares" in 2007 and 2009 each lasted for twelve months or more.  As Plaintiff suggests, to be "severe," an impairment must meet the duration requirement of twelve months or longer.  20 C.F.R.

11

§§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); See also, 20 C.F.R. §§ 404.1509, 416.909 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months."). However, establishing a "severe" impairment at step two requires only a "de minimis" showing. Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997). Plaintiff need only show that an impairment would have more than a minimal effect on his ability to do basic work activities in order to establish that the impairment is "severe." Williams, 844 F.2d at 751. However, he must show more than the mere presence of a condition or ailment. Hinkle, 132 F.3d at 1352 (citing Bowen v. Yuckert, 482 U.S. 137, 153 (1987)).

In finding that Plaintiff's degenerative disc disease and sciatica are "severe" at step two, the ALJ found only that for at least a year those impairments had more than a minimal effect on Plaintiff's ability to do basic work activities, he did not find that the "flares" or exacerbations of back pain in 2007 and 2009 lasted more than a year, or even at least a year. "Back pain" is a symptom, not an impairment. Impairments must meet the duration requirement. There is no requirement that each symptom meet the duration requirement, what is required at step two is that the totality of Plaintiff's condition related to a particular impairment or combination of impairments must have more than a minimal effect on his ability to perform basic work activities for at least 12 months. The ultimate question the ALJ was tasked to answer was whether Plaintiff's severe impairment(s) also produced an "inability to engage in any substantial gainful activity" which lasted or was expected to last for at least 12 months. Barnhart v. Walton, 535 U.S. 212, 217 (2002)

(quoting 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).  But, that question was not answered at step two of the sequential evaluation process in this case.

The ALJ found that Plaintiff's back impairments--degenerative disc disease and sciatica--were "severe" and therefore met the duration requirement.  He also found that certain symptoms resulting from those impairments--"the claimant's back problems"-- come and go.  As Plaintiff tacitly admits, the record evidence supports the finding that Plaintiff's back problems come and go.  (Pl. Br. 9) ("there is evidence in the record to support the notion that plaintiff had periods when his back pain was exacerbated").  He shows no error in the ALJ's first reason to discount Dr. Neblett's opinion.

Plaintiff argues that the ALJ's second reason (there were periods when Plaintiff worked at SGA) is erroneous because those periods were outside the adjudicative period, and also because such a finding is precluded by the ALJ's step one finding that Plaintiff had not engaged in SGA since his alleged onset date.  (Pl. Br. 10).  The periods of SGA to which the ALJ referred in his decision occurred in 2004 and in the fourth quarter of 2008.  (R. 651) (citing Exs. C1E, C7D (R. 115-26, 794-96)).  Since Plaintiff alleges disability beginning May 9, 2002, these periods are squarely within the adjudicative period, contrary to Plaintiff's argument.  Moreover, although the ALJ did not decide the case at step one of the sequential evaluation process, his step one finding does not preclude reliance on these periods of work as evidence that detracts from Dr. Neblett's opinion.  In his step one analysis, the ALJ specifically noted, "The record shows that the claimant had earnings in excess of the substantial gainful activity level in 2004 and the fourth quarter

13

of 2008." (R. 650-51) (citations omitted).  Contrary to Plaintiff's argument, these periods constitute work at the level of SGA both before and after Dr. Neblett's September 2007 opinion, and as such are material to consideration whether Plaintiff can work now and are a good reason for assigning little weight to Dr. Neblett's opinion.

Finally, Plaintiff argues that Dr. Neblett "was aware of plaintiff's flares of back pain, and nonetheless assessed" limitations, so the ALJ's finding that the opinion was not consistent with the longitudinal record is erroneous.  (Pl. Br. 10).  Plaintiff also implies that the ALJ's decision to discount Dr. Neblett's opinion is foreclosed by the earlier decision of the district court.  Id.

The court discussed the issue of "flares" of back pain earlier and will not address it again.  Moreover, the decision to discount Dr. Neblett's opinion is not foreclosed by the court's earlier decision.  In that decision, the court found that each of the reasons given by ALJ Burbank were an insufficient basis to accord no weight to Dr. Neblett's opinion.  (R. 717-21).  Here, ALJ Harty did not accord no weight to the opinion, he accorded it little weight.  His reasons to discount Dr. Neblett's opinion are completely different than the reasons given by ALJ Burbank.  Moreover, as discussed above, each reason is legitimate and is supported by substantial record evidence.  Even assuming the court's earlier remand order has a preclusive effect in the proceedings on remand, ALJ Harty's decision is not inconsistent with that order.  Plaintiff has shown no error in the ALJ's evaluation of Dr. Neblett's opinion.

## IV.    The Credibility Determination

14

Plaintiff argues that the ALJ's credibility determination is not supported by substantial record evidence.  He argues that the ALJ erred:  in finding that Plaintiff has not received the type of treatment one would expect for an individual with disabling pain, in finding that being in and out of jail suggests Plaintiff is more active than he alleges, in finding an inconsistency in Plaintiff's testimony that an additional back surgery had less than a fifty percent chance of success, and in failing to balance his discussion of Plaintiff's criminal activities with a discussion of his "new way of life."  (Pl. Br. 13-17). The Commissioner argues that "the ALJ partially credited Plaintiff's testimony, and to the extent he discounted it, he discussed his reasons in detail, citing to specific facts in the record and inconsistencies in Plaintiff's statements and testimony."  (Comm'r Br. 13). The Commissioner then points to record evidence which, in his view, supports the ALJ's credibility determination, and argues that the determination should be affirmed because it is supported by substantial record evidence.  Id. 14-20.

The decision reveals that the ALJ made an extensive evaluation of the credibility of Plaintiff's allegations of symptoms and provided numerous reasons for discounting his credibility.  (R. 653-56).  He found that Plaintiff's allegations "are not credible to the extent they are inconsistent with the above residual functional capacity assessment" (R. 653) (emphasis added), but he also found that Plaintiff's "allegations of back pain are credible to the extent that he is reduced to work at the light exertional level with the additional limitations set out in the residual functional capacity above."  (R. 655) (emphasis added).  The ALJ discounted Plaintiff's allegations because disabling pain is

15

not supported by the objective evidence and his daily activities are more limited than

suggested by the medical evidence and examination findings, because his treatment is not

what one would expect for pain of disabling severity, because he asserted less than a 50

percent chance of successful back surgery whereas the most recent treatment notes

establish that he had a 70 percent chance of success, because he testified that he stopped

all pain medication and controls his pain with exercise and a back brace, because he may

engage in drug seeking behavior, because he was reported as a "deceptive historian,"

because he has been in and out of jail thereby suggesting greater activity than alleged, and

because he has a felony conviction involving moral turpitude which suggests his

testimony should not be fully credited in making judicial decisions.  (R. 655-56).

An ALJ's credibility determinations are generally treated as binding on review.

Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent, 698 F.2d at 413.

"Credibility determinations are peculiarly the province of the finder of fact" and will not

be overturned when supported by substantial evidence.  Wilson, 602 F.3d at 1144; accord

Hackett, 395 F.3d at 1173.  Therefore, in reviewing the ALJ's credibility determinations,

the court will usually defer to the ALJ on matters involving witness credibility.  Glass v.

Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994); but see Thompson, 987 F.2d at 1490

("deference is not an absolute rule").

Plaintiff must demonstrate the error in the ALJ's rationale or finding; the mere fact

that there is evidence which might support a contrary finding will not establish error in

the ALJ's determination.  "The possibility of drawing two inconsistent conclusions from

the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.  We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo."  <u>Lax</u>, 489 F.3d at 1084 (citations, quotations, and bracket omitted); <u>see also</u>, <u>Consolo v. Fed. Maritime Comm'n</u>, 383 U.S. 607, 620 (1966) (same).  Therefore, where the ALJ has reached a reasonable conclusion that is supported by substantial evidence in the record, the court will not reweigh the evidence and reject that conclusion even if it might have reached a contrary conclusion in the first instance.  But, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  <u>Huston v. Bowen</u>, 838 F.2d 1125, 1133 (10th Cir. 1988).

As the Commissioner argues, the ALJ here partially credited Plaintiff's allegations regarding back pain, but discounted much of Plaintiff's remaining allegations.  Moreover, He explained his reasons for discounting the allegations, and closely and affirmatively linked his findings to substantial record evidence.  With but one exception which the court will discuss shortly, Plaintiff acknowledges as he must the record evidence supporting the ALJ's credibility findings, but argues that the ALJ gave that evidence too much weight, and should have given greater weight to other evidence, or should have recognized subtle nuances in the evidence which would lead to a different credibility conclusion.  Such argument merely asks the court to reweigh the evidence and to substitute its judgment for that of the Commissioner, an action which it may not take.

17

The one exception Plaintiff makes in asking the court to reweigh the evidence involves the ALJ's finding that Plaintiff "has not received the type of medical treatment one would expect for an individual with disabling pain." (R. 655). Plaintiff notes that he had two prior back surgeries and argues that "the ALJ failed to cite to any medical evidence that plaintiff did not . . . have the medical treatment one would expect from a disabled person." (Pl. Br. 13-14). He argues that without medical evidence supporting his conclusion "the ALJ overstepped his bounds into the province of medicine." Id. at 14 (citing Miller v. Chater, 99 F.3d 972, 977 (10th Cir. 1996)). He asserts that although it is the ALJ's duty "to weigh conflicting evidence and make disability determinations; he is not in a position to render a medical judgment. Id. (citing Bolan v. Barnhart, 212 F. Supp. 2d 1248, 1262 (D. Kan. 2002).

Plaintiff's argument misses the point of the ALJ's decision. The ALJ did not find that Plaintiff did not "have the medical treatment one would expect from a disabled person," as alleged by Plaintiff. Rather, he found that Plaintiff did not have the "medical treatment one would expect for an individual with disabling pain." The ALJ's finding is not a "medical judgment" as argued by Plaintiff but, in context, is a practical, common-sense observation that someone in disabling pain would show it more in clinical evaluations than is demonstrated in this record, and would seek much more extensive treatment than merely controlling his pain with exercise and with use of a back brace. It is an acknowledgment of other facts upon which the ALJ specifically relied in the decision, that "Dr. Moeller considered the likelihood of malingering" (R. 654), and that

18

Plaintiff was a deceptive historian.  (R. 656).  While it is true that an ALJ may not make medical judgments and may not overstep his bounds into the province of medicine to substitute his medical judgment for that of a physician, that is not what happened in this case.  Plaintiff has shown no error in the decision at issue here.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Dated this 21st  day of September 2012, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**

19